THOMAS *et al.*, administrators, *vs.* GABOURY.

Exceptions of law to the report of the auditor which appeared to relate rather to the sufficiency than the competency of the evidence, were properly stricken by the court; but there was error in striking the exceptions of fact in this case.

July 11, 1888.

Auditors. Practice in superior court. Before Judge SMITH. Muscogee superior court. May term, 1887.

The complainants filed their bill, alleging as follows: Gibson, as owner of certain land in Muscogee county, known as the Cook place, did, on January 27, 1883, sell one-half undivided interest therein to the defendant on credit for $4,750, accepting defendant's note for said sum, due one day after date, to secure which, with interest at ten per cent., the defendant executed a mortgage on his said one-half undivided interest to the said Gibson. The only credit on said note and mortgage is $500 entered on the back of the note of date 27th January, 1883. On said January 27, 1883, Gibson and Gaboury entered into a writ-ten contract to divide said land into building lots, and to sell the same; Gibson to receive all money received until Gaboury's half should 'pay the note and mortgage. On December 29, 1883, Gibson and Gaboury entered into a written contract between themselves to construct a street railroad in Columbus, the contract reciting that " the said J. A. Gaboury has heretofore made and entered into a con-tract with the Columbus Railroad Company for the con-struction and equipment of a street railroad in the city of Columbus upon certain terms and conditions, as set out in said contract." Gaboury and Gibson associated them-selves as copartners in the construction and equipment of said road upon the following terms (Gibson being a si-lent partner): Business to be done in Gaboury's name, he to make all contracts, and manage the entire business; Gibson to make all disbursements, upon vouchers ap-proved by Gaboury; Gibson to advance money as may be needed, to amount of $1,500, to be charged to the Cook property fund, and to be paid back from profits of railroad contract; all money paid to Gaboury by railroad to be paid over by him to Gibson, and when all expenses are paid, profits to be equally divided; Gaboury, for his ser-vices, to be paid $240.50, to be paid as part of expenses

of construction; actual traveling expenses of Gaboury to be considered as expenses and to be paid for by the firm. The contract then provides the scheme of settlement between the partners: first, payment of all the cost of construction; second, any advances made by Gibson under the third article of this agreement and charged to the Cook fund to be replaced; third, profits to be equally divided.

The net proceeds of the Cook fund were $6,455.80, and there were notes and mortgages for land sold and due the Cook fund, amounting to $2,878.96; one-half of which, when collected, would belong to Gaboury. The notes and mortgages were in the hands of Gibson at his death, as it was provided in the Cook land contract that Gibson was to hold all notes and mortgages until he was paid the note of Gaboury for purchase money. Gaboury received from the railroad company for building the road, $11,000; its cost of construction was $8,743.71. Of this, $2,243.71 was paid by the Cook fund, leaving $6,500, which was paid out of the railroad fund. The prayer is for an accounting and settlement of these contracts, and for a decree of foreclosure on certain lots of the Cook land now held by Gibson and Gaboury to satisfy the mortgage and note for the purchase money. Gibson died about the time of the completion of the railroad, and before any settlement with Gaboury was made.

The defendant answered, setting up that, on May 27, 1884, he and Gibson had a full settlement, and claiming several amounts as due to himself. It appeared therefrom that, among the items of the $11,000 received by him from the railroad company was a check for $2,500 signed by Gibson.

The case having been referred to an auditor, he found in favor of the defendant. On the hearing before him, R. H. Hunter testified as to the settlement, and that he assisted thereat. The exceptions of law to the auditor's report were the following:

(1) The defendant, in his answer, claimed that he and

D. N. Gibson had settled all matters between them, by sub-mitting their Cook account, the construction of street rail-road account, and an individual account due by Gaboury to Gibson, as well as the account of J. A. Gaboury, due Gibson & Gaboury, of all receipts received by him in pay-ment of the construction of the street railroad, to-wit, $11,000, to R. H. Hunter, who had made a settlement be-tween them; the same being an accord and satisfaction of all matters between them.   The complainant, upon the close of R. H. Hunter's evidence, moved the auditor to rule it out, in so far as it went to establish an accord and satisfaction of all matters between D. N. Gibson and J. A. Gaboury, because it did not establish an accord and satis-faction, which motion the auditor overruled; and this is excepted to.

(2) Complainant then moved the auditor to rule out the evidence of Hunter, except in so far as it went to es-tablish a verification of the accounts on the book kept by D. N. Gibson of the street-car company account, and the Cook fund account as kept by Gibson, and as evidence, by the statement of Hunter attached to the auditor's report, showing a credit of $2,822.78 to be placed on the note; the same being evidence only of a partial agreement of settlement, which was unexecuted at the death of Gibson; and could not be a total accord and satisfaction, because it is apparent upon the face of the statement made by Hunter, that the profits made on the construction of the street railroad were not included in said statement, and which Hunter testified was not settled by him in his calculations, as well as items due Gibson for money loaned, which appeared on the individual account of Gaboury, since January 1, 1884.   This motion the auditor overruled, and the complainants except.

(3) Complainants moved to rule out Hunter's evidence of settlement, because it was apparent that no settlement was executed by and between Gibson and Gaboury, and an unexecuted agreement could not be set up after the

death of D. N. Gibson; it appearing from the evidence that there was no submission in writing between said parties, nor was Hunter sworn, or any testimony delivered under oath; but that all that Hunter did was to make out the statement which defendant offered in evidence over complainant's objection; the $4,750 note having no such credit on it as the statement claimed, to-wit, $2,822.78, and Hunter testifying that the profits on the street railroad and the $2,500 check had not been taken into consideration by him.

(4) The complainant offered evidence to impeach that portion of Hunter's testimony outside of and beyond an explanation by him of the statement made by him, which is attached to the auditor's report, upon the ground that he had made contradictory statements. The auditor reports that Hunter's testimony was not successfully impeached, to which complainant excepts, and insists that, from the vague and indefinite remembrance of Hunter as to what took place between Gibson and Gaboury, outside and beyond the statement by him, coupled with his contradictory statements to the witnesses, his testimony should not be believed in so far as becoming the foundation of a report of settlement, when upon a calculation, including the $4,500 in the hands of Gaboury, no such result as found by the auditor can be reached.

Among the exceptions of fact were these:

(1) The auditor reported that, on June 1, 1884, " the Hunter statement accounted for the Gibson & Gaboury account" (the same being the Cook fund), and entitled that $4,750 note of J. A. Gaboury, dated January 27, 1883, to a credit of $2,822.78, as of June 1, 1884; and "that there was a complete settlement of the street-car company account, and all matters growing out of the railroad contract to June 1, 1884." To which finding the complainants except, and say it is unwarranted by the evidence.

(3) Complainant excepts to the finding that, on June 1, 1884, Gibson owed Gaboury a check for $2,500, as un-

warranted by the evidence; because, if there was any settlement in full on June 1, 1884, it could not have been arrived at without including the $2,500 check, for when the Cook fund paid all the expense of building the street railroad except $6,500, it left the profit in the hands of Gaboury, to-wit, $11,000 less $6,500; and this check being a part of the balance, $4,500, Gibson was entitled to half the profits, etc.

The remaining facts necessary to be reported will be found in the decision.

G. E. THOMAS, Jr., and HATCHER & PEABODY, for plaintiffs.

PEABODY, BRANNON & BATTLE and GOETCHIUS & CHAPPELL for defendant.

SIMMONS, Justice.

The plaintiffs in error, as administrators of D. N. Gibson, filed their bill in the court below against Gaboury, the defendant in error, for an account and settlement of the partnership business between their intestate and Gaboury. The whole matter in controversy was referred by the court to an auditor. The auditor filed his report, and the plaintiffs in error filed certain exceptions of law and fact thereto. On the trial of the case in the court below, the defendant moved to strike the exceptions both of law and fact. The court granted the motion and the plaintiffs excepted.

There was no error in the judgment of the court striking the exceptions of law; but in our opinion, the court erred in striking the exceptions of fact. The evidence shows that the two partners were to build a street railroad, that Gibson was to furnish the money, that the money he furnished was to be paid back to him, and that when paid back they were to share in the profits equally. They were also partners in certain land called the "Cook property." The auditor found that, a short time before the

death of Gibson, they met together and had a final and complete settlement of all their street railroad accounts; and this is one of the findings excepted to, which exception was stricken by the court. The evidence shows that before Gibson's death, he purchased a certain number of shares in the street railroad company, for which he gave his check to that company for $2,500, and that company passed it to the partnership, Gaboury receiving it, and it thus became the property of the partnership. He and Gaboury were the sole partners. This check then belonged to him and Gaboury. Hunter testified that in the settlement which he helped Gibson and Gaboury to make, a short time before the death of Gibson, this check was not taken into consideration, nor were the profits of the construction of the street railroad considered in said settlement. We cannot well see how a full and complete settlement of the partnership affairs was made between these parties without taking into consideration this check and the profits or losses of the construction of the street railroad. It therefore seems to us that the auditor erred in finding that the settlement made prior to the death of Gibson, in which Hunter assisted, was a full and complete settlement between these parties; and we think it would have been better for the court to have referred these exceptions of fact to the jury and let them pass upon the same. If the auditor was right in holding there was a complete settlement, he was certainly in error in holding that the check was still open against Gibson, for if the settlement included the check it was paid. If it did not include it, half of the check would be Gibson's, and it would be open against him for the other half.

We therefore reverse the judgment of the court below, so that these exceptions of fact may be passed upon by the jury.

Judgment reversed.